IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JULIO DE LIMA SILVA,

                Plaintiff,

v.

STATE OF WISCONSIN DEPARTMENT
OF CORRECTIONS and QUALA
CHAMPAGNE,

                Defendants.

OPINION AND ORDER

17-cv-128-wmc

---

This case is set for a jury trial, commencing on January 27, 2020. In advance of the final pretrial conference ("FPTC") scheduled for January 14, the court issues the following opinion and order on the parties' respective motions *in limine* ("MILs").

OPINION

I. **Plaintiff's Motions *in Limine* (dkt. #129)**

    A. **MIL No. 1: limit testimony and argument about whether plaintiff's use of force violated DOC rules or policies**

Plaintiff seeks an order precluding any "analysis, opinions or conclusions about the propriety of Plaintiff's use of force or whether Plaintiff's conduct violated and Department of Corrections rules or policies," except for evidence or testimony reflecting opinions of or opinions that were presented to decisionmakers about plaintiff's discipline and termination. (Dkt. #129.) Defendants object to this motion on the basis that it does not adequately describe what evidence or testimony plaintiff seeks to exclude. The court agrees. Rather than deny the motion outright, however, the court will RESERVE, allowing plaintiff to articulate what *specific* evidence he seeks to exclude at the FPTC.

**B. MIL No. 2: preclude Correctional Officer Paul Fulton's testimony about the propriety of plaintiff's use of force or whether it violated DOC rules or policies**

Related to the first motion, plaintiff does provide a specific example of the kind of evidence he seeks to exclude from trial. Because Fulton was not a decisionmaker as to any disciplinary or other employment actions and apparently did not *personally* present his opinions to the decisionmakers, plaintiff argues that his testimony is not relevant and would be unduly prejudicial under Rule 403. Defendants object to this motion on the basis that Fulton was the "only non-inmate eyewitness to the event," obviously other than the plaintiff, and under Federal Rule of Evidence 701, therefore, he is entitled to provide an opinion based his perception of the events that occurred." (Defs.' Opp'n (dkt. #148) 2.)[1]

As an initial matter, Federal Rule of Evidence 701 permits opinion testimony by lay witnesses if "helpful to clearly understanding the witness's testimony or to determining a fact in issue." Fed. R. Evid. 701(b). Assuming it is relevant at all, the court is hard pressed to understand how Fulton's opinions as to how he perceived plaintiff's action in real time would *not* be helpful to a clear understanding of his testimony describing the events. Moreover, to the extent that plaintiff is claiming subsequent reports as to what Fulton perceived were inaccurate (as seems to be the case), Fulton's testimony as to what he recounted at the time would again seem relevant. Perhaps even more dispositive, however, the court assumes that *plaintiff* intends to testify as to what he saw and did, including his

---

[1] While defendants initially identify the challenged testimony as being Fulton's, later in the objection defendants refer to the witness as Korte. The court assumes that this is a typographical error.

own perceptions as to whether he acted appropriately under the circumstances. If so, then plaintiff would have opened the door to Fulton's contrary impressions and perceptions. For all these reasons, Fulton's description or lay opinion as to plaintiff's actual use of force and whether his actions were inappropriate or in violation of DOC policy would appear both relevant and admissible. Because the parties' briefing on this motion is cursory and generally unhelpful as MIL No. 1 on which the court already reserved, the court will also RESERVE on this motion pending further discussion at the FPTC.

## II. Defendants' Motions *in Limine* (dkt. #133)[2]

### A. MIL No. 1: exclude testimony, exhibits and any reference to the decisions of the WERC

Defendants seek to exclude any testimony, exhibits or other reference to the decisions of the Wisconsin Employment Relations Commission ("WERC"). For context only, Commissioner Jim Scott actually issued two decisions. The first decision, dated March 9, 2016, concluded that the DOC did not have "just cause" to terminate de Lima Silva and ordered his reinstatement and payment of lost wages and benefits. (WERC Order (dkt. #46-5) 4-5.) In that decision, Commissioner Scott also found as a matter of fact that de Lima Silva used "reasonable force" and "did not violate the work rules of the DOC." (*Id.* at 4.) In an attached memorandum, the Commissioner detailed his factual findings, including reviewing other incidents of use of force by employees like Officer Korte that did

---

[2] In addition to these motions *in limine*, defendants filed a separate motion to bifurcate liability and damages. (Dkt. #131.) Since it is the court' practice, as set forth in the preliminary pretrial conference order, to bifurcate, this motion is generally unnecessary absent some indication to the contrary. (6/1/17 PPTC Order (dkt. #13) ¶ 8.) Regardless, the motion is GRANTED.

not result in termination of employment. (*Id.* at 11.) The second decision was issued on Jul 28, 2016, and awarded plaintiff fees and costs.

The parties agree that the administrative findings and investigatory file likely fall within the public records exception to hearsay. *See* Fed. R. Evid. 803(8). As defendants correctly point out, however, the fact that these documents may fall within an exception to hearsay neither makes them relevant under Rule 401 nor overcomes an undue prejudice objection under Rule 403. As to these issues, the Seventh Circuit instructs that the court must decide "on a case-by-case basis, what, if any [administrative] investigatory materials should be admitted at trial." *Tulloss v. Near North Montessori School, Inc.*, 776 F.2d 150, 154 (7th Cir. 1985). In making this determination, the court should consider "the danger of unfair prejudice to the defendant" and whether the "time spent by the defendant in exposing the weaknesses of the [administrative] report would add unduly to the length of the trial." *Id.* (quoting *Johnson v. Yellow Freight Sys.. Inc.*, 734 F.2d 1304, 1309 (8th Cir. 1984)).

Here, the Commissioner's determination that plaintiff used reasonable force and did not violate DOC policy, along with his specific analysis of Correctional Officer Korte as a comparator, involve precisely the same terrain that the jury will be required to traverse in determining whether defendants violated Title VII and the Equal Protection Clause. Presented with this evidence, there is a significant risk that the jury will take these findings at face value and conclude, "this has already been decided and here is the decision" without conducting their own, independent review of the evidence and determination of the facts. *Tulloss*, 776 F.2d at 154. The court, therefore, will GRANT this motion. However, subject

to appropriate safeguards, it is substantially less clear why prior testimony and exhibits should be excluded on their face. As such, this portion of the motion is RESERVED pending further discussion at the FPTC.[3]

**B. MIL No. 2: preclude evidence of others in the DOC who were disciplined but not terminated for excessive force**

In this motion, defendants seek to exclude evidence of other DOC employees who were disciplined for excessive use of force and not terminated. Specifically, defendants direct the court to a proposed finding of fact plaintiff submitted at summary judgment in which he represents, relying on defendants' responses to interrogatories, that "[b]etween 2010 and 2015, 19 employees of the Department of Corrections were disciplined for excessive use of force and not terminated as part of the discipline." (Defs.' Mot. (dkt. #133) 3 (citing Defs.' Resp. to Pl.'s PFOFs (dkt. #91) ¶ 305).) The proposed finding also lists the names of the 19 employees. Defendants contend that there is not sufficient evidence to establish that these employees were similarly situated as plaintiff, noting that: they worked at different institutions for different supervisors; no information is provided about their race or ethnicity; and there is a lack of information about the degree of force used as compared to the force used by de Lima Silva. Moreover, defendants argue that allowing plaintiff to introduce this list would result in multiple trials within a trial.

In response, plaintiff contends that there is evidence to support a finding that

---

[3] In his opposition, plaintiff also points out that the fact of de Lima Silva's reinstatement and award of back pay will be relevant to the jury's determination of damages. The court agrees, but the fact of his reinstatement and award of back pay could be introduced without admitting the WERC decisions. Moreover, the court could simply craft the instructions to limit the jury's award of damages to the appropriate period and kind. Regardless, this, too, can be addressed at the FPTC.

5

Warden Champagne was aware of other DOC employees who were disciplined but not terminated at the time she made the decision to terminate de Lima Silva. Notably, as support, plaintiff does not point to the list of 19 employees defendants provided in response to interrogatories; instead, plaintiff directs the court to evidence in the record reflecting that David Hicks, an Employee Relations Specialist with the Department of Corrections, reviewed a disciplinary database and pulled a list showing "what type of discipline has been imposed in similar instances for similar infractions," and shared this information with the DART team, including Warden Champagne. (Pl.'s Opp'n (dkt. #14) 3 (citing Hicks Decl. (dkt. #36) ¶ 12).) The list Hicks prepared and showed the DART team contains a different list of names than that disclosed in response to interrogatories, though there appears to be some overlap. (Reinhardt Decl., Ex. 7 (dkt. #66-5).) The court also notes that this list contains a variety of discipline, including termination. Based on Hicks' own representation that these employees engaged in "similar infractions" and that Warden Champagne and other decisionmakers were presented with this list to aid in the decision of whether to terminate plaintiff's employment, the court agrees with plaintiff that this evidence is relevant to his claims.

While defendants raise a legitimate concern as to whether this evidence may open the door to trials within the trial, the court is uncertain why this would be so, since the decisionmakers appear to have accepted it on face value. Regardless, their receipt of the list makes that unavoidable and the motion is DENIED as to the Hicks list. As to whether the list of employees offered by defendants in response to an interrogatory should be allowed in as a statement by a party opponent, the court agrees it is a much closer question,

6

since the reference, including whether similarly situated to de Lima Silva, is less clear. As such, the court will RESERVE on this portion of the motion pending further discussion at the FPTC.

### C. MIL No. 3: preclude evidence of Sgt. Jeff Jaeger allegedly laughing at plaintiff's accent

Sergeant Jeff Jaeger was assigned by Warden Champagne to conduct an investigation into de Lima Silva's use of force. Plaintiff contends that during this investigation, Jaeger laughed at his accent. Defendants seek to exclude this testimony as irrelevant and unduly prejudicial. Specifically, defendants argue that any alleged laughter constitutes nothing more than a "stray remark" and, regardless, is it not relevant because Jaeger was not a decisionmaker. Instead, they contend that he was "simply conduct[ing] an unbiased investigation about the June 23, 2014 use of force by de Lima Silva and co-authored 'Summary of Investigation' report for Champagne." (Defs.' Mot. (dkt. #133) 6.) In response, plaintiff persuasively points out that Jaeger's role in the investigation included co-drafting a key investigative report for the final decisionmaker Champagne, which plaintiff contends contains multiple statements attributed to him that he did *not* make shortly after Jaeger supposedly derisively laughed at plaintiff's accent. Although a jury is certainly free to conclude the laugh did not happen or had no impact on Jaeger's report, *or* that Jaeger's and his reports influence on Warden Champagne was insufficient to satisfy a "cat's paw" theory, but this evidence of Jaeger's discriminatory animus is sufficiently close in time to make it arguably relevant to his claims against the DOC. Regardless, whether this evidence comes in under a cat's paw theory, or simply because

7

Jaeger was himself closely involved in the investigation leading up to de Lima Silva's termination, the court finds the evidence sufficiently relevant and not unduly prejudicial. Accordingly, this motion is DENIED.

ORDER

IT IS ORDERED that:

1) Plaintiff Julio de Lima Silva's motions in limine (dkt. #129) are RESERVED pending a further proffer and argument at the FPTC.

2) Defendants the Wisconsin Department of Corrections and Quala Champagne's motions *in limine* (dkt. #133) are GRANTED IN PART, DENIED IN PART AND RESERVED IN PART as set forth above.

3) Defendants' motion to bifurcate liability and damages (dkt. #131) is GRANTED.

Entered this 9th day of January, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge